ERVIN S. SANDERS, JR., BY HIS GUARDIAN AD LITEM, ERVIN S. SANDERS AND ERVIN S. SANDERS, INDIVIDUALLY v. GEORGE A. YANCEY TRUCKING COMPANY, IVEY VANCE RIGGS, WILLIAM C. LAWTON, ADMINISTRATOR OF THE ESTATE OF JOHN GULLEY, DECEASED, AND LOIS VONNIE GULLEY

———————

THOMAS JUNIOR JOHNSON v. GEORGE A. YANCEY TRUCKING COMPANY, IVEY VANCE RIGGS, WILLIAM C. LAWTON, ADMINISTRATOR OF THE ESTATE OF JOHN GULLEY, DECEASED, AND LOIS VONNIE GULLEY

———————

JERRY GULLEY, BY HIS GUARDIAN AD LITEM, CHARLES B. MORRIS, JR. v. GEORGE A. YANCEY TRUCKING COMPANY, IVEY VANCE RIGGS, WILLIAM C. LAWTON, ADMINISTRATOR OF THE ESTATE OF JOHN GULLEY, DECEASED, AND LOIS VONNIE GULLEY

N0. 8210SC666

(Filed 21 June 1983)

1. **Appeal and Error § 6— judgment on one issue—mistrial on another issue—appealability of decision**

In a negligence action, where the trial judge separated the issues of negligence from the issues of damages, where the jury answered that one defendant was not negligent while being unable to reach a verdict on the issue of whether another defendant was negligent, and where the judge accepted the verdict and entered judgment on the issue which was determined while

Sanders v. Yancey Trucking Co.; Johnson v. Yancey Trucking Co.

declaring a mistrial on the other issue, the judgment was immediately reviewable on appeal. G.S. 1-277(a), and G.S. 1A-1, Rule 54(b).

**2. Witnesses § 8.2— prior convictions—conclusiveness of witness's answer—sifting the witness**

Where a witness denied three times in the presence of the jury a conviction for misdemeanor assault on a female, the judge sufficiently allowed counsel to "sift" the witness. The fact that, at a voir dire "a couple of days" later, the witness answered that he had been convicted of the crime and explained why he assumed he had not been convicted of it before did not show that the witness was trying to be evasive. In his renewed efforts at impeachment, the cross-examiner was held to be bound by the negative answers of the original examination.

**3. Evidence § 50— expert witness—not named in answers to interrogatories—allowed to testify—proper**

The trial court did not err in allowing a medical expert witness to testify concerning one defendant's diabetic condition even though his name, address, and the basis of his opinion had not been provided to appellants by answers to interrogatories. Ten days before the witness testified, appellants' counsel produced for defendant medical records of lab results of the blood sugar level of the diabetic defendant, the witness's name was on the witness list furnished appellants on Friday before Monday's trial, and although the jury was impaneled on Wednesday, 16 September 1981, the doctor did not testify until 24 September 1981.

**4. Evidence § 49.3— hypothetical question—use of "would" instead of "could" or "might"**

When hypothetical questions are used, it is not required that the witness be first asked the question of causation using "could" or "might" language before he is asked in the phraseology of "would." If the expert has such an opinion, both the question and answer may be properly phrased in "would."

**5. Trial § 42— sufficiency of verdict**

It was proper for the trial judge to receive and accept a verdict on one issue and to render judgment accordingly and to grant a new trial on another issue concerning negligence when the jury was unable to agree upon an answer.

APPEAL by defendants George A. Yancey Trucking Company and Ivey Vance Riggs from *Herring, Judge.* Judgment entered 19 October 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 10 May 1983.

Two motor vehicles collided on U.S. Highway No. 64 in Tyrrell County on 13 July 1979. Three cases alleging negligent operation of motor vehicles have been consolidated for trial and were tried in Wake County. All plaintiffs were injured passengers in a

pickup truck going east. The driver of the pickup truck, John Gulley, was killed. His estate is represented by William C. Lawton, Administrator, as a defendant. John Gulley and his wife, Lois Vonnie Gulley, were the owners of the pickup truck. The dump truck, owned by defendant George A. Yancey Trucking Co., and driven by defendant Riggs, was going west.

Because of the complex nature of the claims, counterclaims, and cross claims, Judge Herring held extensive pre-trial conferences and ruled on numerous motions. A bifurcated trial resulted, in which damages were separated from actionable negligence.

In the first phase of the proceedings, Judge Herring submitted two issues to the jury: (1) Was the driver of the dump truck (Riggs) negligent? (2) Was the driver of the pickup truck (John Gulley) negligent? The jury answered the second issue "No," and were unable to reach a verdict as to the first issue. A judgment on the verdict was granted as to the second issue, with a mistrial declared on the first issue.

Defendants Yancey Trucking and Riggs appealed. Defendants William C. Lawton, Administrator of the Estate of John Gulley, deceased, and Lois Vonnie Gulley did not appeal. Plaintiffs did not appeal. On 14 September 1981, plaintiff Jerry Gulley took a voluntary dismissal of his action against the Gulley defendants.

*Barringer, Allen & Pinnix by M. Jean Calhoun and William D. Harazin for plaintiff appellee, Thomas Junior Johnson.*

*Moore, Ragsdale, Liggett, Ray & Foley by George R. Ragsdale, Jane Flowers Finch and John N. Hutson, Jr., for defendant appellants, Ivey Vance Riggs and George A. Yancey Trucking Company; and Clifton & Singer by Ben F. Clifton, Jr., for defendant appellant Riggs.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan by James G. Billings for appellees, William C. Lawton, Administrator of the Estate of John Gulley, Deceased, and Lois Vonnie Gulley.*

BRASWELL, Judge.

Two trucks, traveling in opposite directions met and collided upon U.S. Highway #64 in Tyrrell County. The major factual issue

in this negligence action is: which truck crossed the center line of this two-lane highway? The question presents a factual dispute which lies within the province of a jury to resolve.

Defendant Riggs, driver of defendant Yancey's dump truck, testified that the Gulley pickup truck "darted" across the center line directly into his path. Mabel Davenport, an alleged eye-witness, corroborated Riggs' testimony. Ervin Sanders, Jr., and Johnny Gulley, passengers in the Gulley pickup truck, testified that it was the Riggs dump truck which crossed the center line and that the crash took place on the pickup truck's side of the road. Ronald Wilson and Donald Wilson, driver and passenger in the vehicle immediately ahead of Gulley, testified that the collision occurred on the pickup truck's side of the road. Thomas Junior Johnson, one of the plaintiffs, corroborated the testimony that the collision occurred on the pickup truck's side of the road. Photographic exhibits of each vehicle illustrate extensive property damage to the respective vehicles and some of the photographs illustrate scuff markings in the surface of the roadway on the dump truck's side of the center line.

Based on the proceedings below, there are four basic areas of assignments of error that now require appellate review: (1) the immediate appealability of an otherwise interlocutory judgment, (2) the cross-examination of Thomas Junior Johnson, (3) evidentiary and jury instruction questions relating to witness Dr. Arthur Davis and (4) the denial of defendants' post-trial motions.

## I.

### APPEALABILITY

[1] Confronted with multiple claims and multiple parties, Judge Herring and trial counsel attempted to make the task of the jury and parties less complicated by separating the issues of negligence from the issues of damages. G.S. 1A-1, Rule 42(b); *Pinner v. Southern Bell,* 60 N.C. App. 257, 259, 298 S.E. 2d 749, 751 (1983). With multiple claims involved, it was commendable to resolve the problem of negligence first. This was to be accomplished by submitting to the jury the alleged actionable negligence of each driver. The jury answered that John Gulley, now deceased, driver of the pickup, was not negligent. The jury was unable to reach a verdict on whether defendant Riggs was negli-

gent. Thereupon, over objection, Judge Herring accepted a verdict and entered judgment on the second issue of Gulley's negligence.

As to the defendants William C. Lawton, Administrator of the Estate of John Gulley, deceased, and Lois Vonnie Gulley, there is a final judgment in their favor on all matters in the lawsuit. As to the first issue on which there was no verdict, Judge Herring declared a mistrial and ordered a new trial. Because the judgment does affect a substantial right of the defendants Riggs and Yancey Trucking in that it fully and finally determined their indemnity and contribution claims against the Estate of Gulley, and because the judgment affects the individual rights of Riggs for his claim for personal injuries against the Estate of Gulley, and because the verdict has absolved John Gulley, deceased, of any negligence as driver of the pickup truck, we hold the judgment is immediately reviewable on appeal. G.S. 1-277(a); G.S. 1A-1, Rule 54(b); *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976).

## II.

### CROSS-EXAMINATION OF THOMAS JUNIOR JOHNSON

[2] It must first be remembered that Thomas Junior Johnson is a plaintiff, that he was riding in the Gulley pickup truck, that Lois Vonnie Gulley, widow of John, was a party-defendant. Counsel for defendants Riggs and Yancey Trucking sought to impeach Johnson as a witness by cross-examining him as to his prior criminal offenses. Johnson admitted, after the objection to the form of the question was overruled, that he was convicted in District Court of larceny on 7 April 1981. To the follow-up question of whether he had been convicted on 16 June 1980 of assault on a female, Johnson answered: "Yes, that's true—back up. What you say?" In the succeeding cross-examination, Johnson twice flatly denied the conviction with his "No, sir, I wasn't." Then when asked if he had pleaded guilty to it, Johnson answered, "No, sir, I didn't."

At a *voir dire* hearing "a couple of days" later, additional facts were revealed about the charge of assault on a female. When asked, "Is it true that you have not been convicted of assault on a female?" Johnson answered, "Well, the lawyer that I

had, J. Michael Weeks, he didn't tell me that I was convicted, so I just assumed that I wasn't convicted of it." Later, on *voir dire* Johnson admitted that on 8 July 1980 he had been initially charged with rape of Lois Gulley. Johnson then testified that he recalled going into court and tendering a plea to assault on a female, that his attorney was J. Michael Weeks, that the judge sentenced him to 90 days and gave him credit for the same time spent in jail, and that he walked out of court. Counsel's motion to be permitted to ask the *voir dire* questions in the presence of the jury was denied in the "discretion" of the judge.

Judge Herring exercised his power of choice between two courses of action. Had he chosen to allow the further character impeachment questions, we perceive that there would have been no abuse of discretion. Nor do we perceive any abuse of discretion in denying the requested additional cross-examination. The record shows an absence of arbitrary action. After Johnson had denied three times in the presence of the jury the misdemeanor assault on a female, the judge had sufficiently allowed counsel to "sift" the witness. As expressed by the court in *State v. Currie*, 293 N.C. 523, 528, 238 S.E. 2d· 477, 480 (1977),

> "The scope of cross-examination rests largely in the discretion of the trial judge because he is present, hears the testimony, observes the demeanor of the witnesses, knows the background of the case, and is in a favored position to determine the proper limits of cross-examination. For these reasons his rulings thereon will not be disturbed absent abuse of discretion amounting to prejudicial error." [Citations omitted.]

To like effect is *State v. Waddell*, 289 N.C. 19, 26, 220 S.E. 2d 293, 298-99 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3211 (1976): "The scope of cross-examination rests largely in the trial judge's discretion and his rulings thereon will not be disturbed unless it is shown that the verdict is improperly influenced thereby." No such showing has been made in this case.

Here, the original cross-examination came when Johnson was a witness for the plaintiffs. There was no request for any *voir dire* at any point while the witness was being asked about his prior convictions. The *voir dire* which leads to this assignment of

error came "a couple of days" later. The testimony appears in the transcript as rebuttal evidence for defendant-appellants Yancey Trucking and Riggs. Counsel for appellants said: "I have additional evidence. If you would like for me to call a witness, I will do so, Thomas Junior Johnson." After numerous questions about the collision, counsel then returned to the subject of assault on a female: "Thomas, I understood you to tell me a couple of days ago, when we last were together, that you had not been convicted of assault on a female in Raleigh, is that correct?" The sustaining of the objections led to the *voir dire*. Johnson clarified his answer of "yes" by explaining: "Well, the lawyer I had, J. Michael Weeks, he didn't tell me that I was convicted, so I just assumed I wasn't convicted of it." Even though Johnson's assumption was wrong, the record does not show that the witness was trying to be evasive. In his renewed efforts at impeachment the cross-examiner is held to be bound by the negative answers of the original examination, since no abuse of discretion has been shown.

Defendant-appellants contend that a new trial is mandated on this issue. They argue that since Johnson was an eyewitness, his testimony that the dump truck crossed the center line was given great emphasis by the jury. If appellants had been allowed to pursue before the jury evidence elicited by cross-examination or *voir dire*, they speculate that the jury might not have believed Johnson's testimony. However, other eyewitnesses for the plaintiffs also testified that the dump truck crossed the center line: Ervin Sanders, Jr., and John Gulley, Jr. Ronald Wilson and Donald Wilson, driver and passenger in the vehicle immediately ahead of Gulley, both gave testimony indicating that the dump truck had its front tire just over the center line, and then the collision occurred instantly behind them, as their own vehicle took evasive action by pulling to the right. Thus, Johnson's testimony as to the accident was cumulative, even though substantive, and does not show that the jury verdict on the second issue was improperly influenced by the witness Johnson. This assignment of error is overruled.

### III.

### DR. DAVIS AS A WITNESS AND RELATED JURY INSTRUCTIONS

[3] Dr. Arthur Davis testified as a witness for the Gulley defendants. Dr. Davis is a physician employed as Director of Im-

munopathology and Research for Biomedical Laboratories, which is the third largest medical reference laboratory in the world. After an extensive *voir dire* Dr. Davis testified before the jury about the medical condition of diabetes, about insulin, and about their effects on the human system. Dr. Davis testified in response to a hypothetical question that it was his medical opinion that defendant Riggs' mental and physical faculties were impaired at the time of the collision from a diabetic condition, to the extent that Riggs' judgment, reaction time, and coordination were decreased. Earlier, Riggs had testified that he had had a diabetic condition for 27 years, took insulin regularly, and had taken insulin in the early morning of the date of collision. The hospital records of Riggs concerning his admission and condition after the collision were in evidence.

Appellants contend that it was error to permit Dr. Davis' name to remain on the pre-trial order as a medical expert witness or to allow him to testify, because his name, address, and the basis of his opinion had not been provided to appellants by answers to interrogatories; that a hypothetical question was improperly framed and that the answer was unresponsive and irrelevant; that the trial court should not have allowed evidence on Riggs' diabetic condition; and that the judge should not have instructed the jury by giving a summation of Dr. Davis' opinion testimony about Riggs' condition. We disagree that error occurred; and, if there were error, it is now moot because the jury did not answer the issue of Riggs' negligence. A new trial on this issue has already been ordered in the trial division by the trial judge. All of the testimony of Dr. Davis related to the condition of Riggs and not to any other party.

The appellants concede that the decision of the trial judge allowing Dr. Davis to testify can only be overturned if we find an abuse of discretion. Having read the 17 assignments of error on this question and the numerous exceptions in support thereof, we find no abuse of discretion.

While appellants contend Dr. Davis was one of eleven surprise witnesses listed for the Gulleys, the record fails to show that any of the other ten persons listed in the addendum to the pre-trial order was ever called as a witness. Monday, 14 September 1981, was the first day of trial. It was devoted to pre-trial

conferences. On the previous Thursday, appellants' counsel produced for Gulley's counsel medical records of lab results of the blood sugar level of driver Riggs made subsequent to the collision. During morning recess of the first day of conferences and trial, additional medical documents of Riggs were made available to Gulley's counsel. Dr. Davis' name was on the witness list furnished appellants on Friday before Monday's trial. The jury was not impaneled until Wednesday, 16 September 1981. Dr. Davis did not testify until 24 September 1981. The trial judge allowed appellants a *voir dire* prior to Dr. Davis' testifying in the presence of the jury. And, as the record reflects, when Dr. Davis' name as a witness was discussed on the first day of trial, appellants' counsel stated: "I am not asking for a continuance."

[4]  The hypothetical question to Dr. Davis to which objection was made contained the word "would" instead of "could" or "might," as to causation and opinion. Our Supreme Court in *Mann v. Transportation Co. and Tillett v. Transportation Co.*, 283 N.C. 734, 198 S.E. 2d 558 (1973), discussed with approval Professor Henry Brandis' comments on the formula of hypotheticals in 1 Stansbury, North Carolina Evidence § 137 (Brandis rev. 1973)[1] and held that in causal relations the purpose of using expert witnesses might be "thwarted or perverted unless the expert witness is allowed to express a positive opinion (if he has one) on the subject." *Id.* at 748, 198 S.E. 2d at 568. This holding was supported in *Taylor v. Boger*, 289 N.C. 560, 223 S.E. 2d 350 (1976). When hypothetical questions are used, it is not required that the witness be first asked the question of causation using "could" or "might" language before he is asked in the phraseology of "would." If the expert has such an opinion, both the question and the answer may be properly phrased in "would." Because Dr. Davis' testimony was relevant to the issue of proximate cause of Riggs' negligent driving, and because the state of Riggs' diabetic condition led to expert opinion evidence as to his probable impaired mental and physical condition, it was competent evidence to be received and to be evaluated by the jury itself.

Regardless of choice of words in this case, the record shows that substantially the same answer was given without appellants' objection during the examination of the same witness by both at-

---

1. Now cited as 1 Brandis on North Carolina Evidence § 137 (1982).

torneys Douglass and Calhoun, and the error, if any, was cured. *Mills, Inc. v. Terminal, Inc.*, 273 N.C. 519, 160 S.E. 2d 735, 43 A.L.R. 3d 591 (1968); *Williams v. Power Co.*, 26 N.C. App. 392, 216 S.E. 2d 482 (1975).

As to the jury instructions regarding Dr. Davis, we find them to have been a fair summary of the evidence. The judge's concluding summary was "that by 9:15 p.m. on that evening there would have been sufficient ketones in Ivey Vance Riggs' body to result in slowed reaction, judgment and coordination." The closing words of the hypothetical to Dr. Davis, and the first part of his answer, follow:

> "[A]s to whether or not there would have been sufficient ketones in Ivey Vance Riggs' body at approximately 9:45 p.m. on the evening of July 13, 1979 to have appreciably affected his mental or physical faculties?
>
> . . . .
>
> In my opinion, based on this information that you have read, that on the basis of reasonable medical certainty that he had these ketone bodies . . . the first change they produce are reaction time. That's slowed down, judgment, that's slowed down, and coordination, that is decreased."

This assignment of error is overruled.

### IV.

### POST-TRIAL MOTIONS

[5] Appellants complain that it was error for the trial court to refuse to set aside the jury verdict, to refuse to grant a new trial on all issues, and to enter and sign the judgment. We disagree and find no error for the reasons given.

Basically, appellants contend that the verdict was incomplete because the jury failed to render a positive answer to both of the issues submitted to it, and that the verdict was incomplete because it failed to dispose of the controversy of joint and concurrent negligence as alleged by all plaintiffs in their complaints. First, we note that none of the plaintiffs appealed. Second, the issues as submitted were the appropriate ones for this bifurcated trial. And, lastly, the jury did render a complete verdict on the

second issue, finding driver John Gulley not negligent. The wording of the second issue, "Was the collision on July 13, 1979, between the vehicle operated by John Gulley and the vehicle operated by Ivey Vance Riggs, and resulting damages, caused by the negligence of John Gulley?" clearly placed the factual issue before the jury. The jury's answer of "no" contains nothing repugnant or unresponsive. It is sensible and complete. *See Allen v. Yarborough*, 201 N.C. 568, 160 S.E. 833 (1931). Thus, it was proper for the trial judge to receive and accept the verdict on the second issue and to render judgment accordingly. The judge exercised his discretion in this area consonant with the law.

As to the court's alleged refusal to grant a new trial, this contention is only half correct. A mistrial was declared on the first issue when the jury was unable to agree upon an answer. A new trial was awarded the defendants Riggs and Yancey Trucking on the first issue of Riggs' alleged negligence. While it is understandable that Riggs and Yancey Trucking would greatly prefer having the Gulleys remain as codefendants in the new trial, the evidence and record do not allow it to be. The jury has spoken on a factual issue that lay within its exclusive province in a trial without prejudicial error as to the appellants.

No error.

Judges WEBB and WHICHARD concur.