LINWOOD EDMONDSON, JR., Plaintiff v. MACCLESFIELD L-P GAS COMPANY, INC., and EMPIRE COMFORT SYSTEMS, INC., a/k/a ECS, INC., Defendants

No. COA06-665

(Filed 3 April 2007)

## 1. Appeal and Error— appealability—interlocutory order—substantial right—risk of inconsistent verdicts

Although plaintiff's appeal of the trial court's grant of summary judgment in favor of defendant Empire in a negligent repair and products liability case is an appeal from an interlocutory order, the order is immediately appealable because it affects a substantial right when: (1) the case involves allegations that the actions of each defendant combined to cause plaintiff's injury; and (2) there is a risk of inconsistent verdicts.

## 2. Appeal and Error— appealability—interlocutory order—substantial right—precluded from obtaining contribution

Defendant Macclesfield's right to participate in the appeal of the interlocutory order granting summary judgment in favor of defendant Empire in a negligent repair and products liability case affects a substantial right because Macclesfield will be precluded from obtaining contribution from Empire in the event plaintiff obtains a judgment against Macclesfield, and thus, both plaintiff and defendant Macclesfield are entitled to an immediate appeal.

## 3. Products Liability— improper modification—proximate cause

The trial court did not err in a negligent repair and products liability action seeking to recover damages for injuries sustained as a result of carbon monoxide exposure by granting summary judgment in favor of defendant Empire based on its conclusion that N.C.G.S. § 99B-3 barred recovery by plaintiff, because: (1) the pertinent heater was manufactured for use with natural gas, modification of the heater for use with liquified petroleum under Empire's instructions required the installation of an air shutter bracket, and no air shutter bracket was found on the heater when it was examined after the incident; (2) a cause of plaintiff's injury was the improper mix of liquified petroleum and combustion air, which was caused at least in part by the lack of an air shutter bracket; and (3) N.C.G.S. § 99B-3 bars a manufacturer's liability where a proximate cause of the injury is the improper modifica-

tion and does not require that the modification be the sole proximate cause.

**4. Appeal and Error— appealability—interlocutory order— expedite administration of justice**

Defendant Macclesfield's petition for writ of certiorari to hear the issue regarding the trial court's denial of defendant's motion for summary judgment in a negligent repair and products liability case is granted because the Court of Appeals is free to exercise its discretion and rule on an appeal from an interlocutory order where the decision would expedite the administration of justice.

**5. Negligence— negligent repair—summary judgment—genuine issue of material fact**

The trial court did not err by denying defendant Macclesfield's motion for summary judgment in a negligent repair action seeking to recover damages for injuries sustained as a result of carbon monoxide exposure because there was a genuine issue of material fact as to whether Macclesfield's employee: (1) failed to repair the heater properly; (2) failed to inspect the work properly after it was performed; and (3) failed to properly test the heater after the work was performed.

**6. Appeal and Error— appellate rules—memorandum of additional authority**

Plaintiff and defendant Empire's motion to dismiss defendant Macclesfield's memorandum of additional authority is allowed because: (1) N.C. R. App. P. 28(g) provides that a memorandum may not be used for additional argument; and (2) Macclesfield has done more than provide the full citation and state the issue to which the additional authority applies.

Appeal by Linwood Edmondson, Jr. (Plaintiff) and Macclesfield L-P Gas Company, Inc. (Macclesfield) from order dated 20 December 2005 and order entered 3 February 2006, *nunc pro tunc* 6 December 2005 by Judge Frank R. Brown in Superior Court, Edgecombe County. Heard in the Court of Appeals 13 December 2006.

*Thomas & Farris, P.A., by Eliot F. Smith; Battle, Winslow, Scott & Wiley, P.A., by M. Greg Crumpler, for Plaintiff-Appellant-Appellee.*

*Valentine Adams Lamar Murray Lewis & Daughtry, L.L.P., by Ernie K. Murray and Kevin N. Lewis, for Defendant-Appellant Macclesfield L-P Gas Company, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by James K. Dorsett, III and Christopher R. Kiger, for Defendant-Appellee Empire Comfort Systems, Inc.*

McGEE, Judge.

Plaintiff filed this action against Macclesfield and Empire Comfort Systems, Inc. (Empire) to recover for injuries Plaintiff sustained as a result of carbon monoxide exposure. Plaintiff contended a gas heater in his home emitted the carbon monoxide. Both Macclesfield and Empire moved for summary judgment. The trial court granted summary judgment in favor of Empire, but denied summary judgment in favor of Macclesfield. Both Plaintiff and Macclesfield appeal the grant of summary judgment in favor of Empire, and Macclesfield appeals the denial of its motion for summary judgment.

Plaintiff testified that on 5 March 2002, he and his wife noticed that the front of a heater in their home was "black, sooty, [and] smutted" and was burning a yellow flame with a black tip. The following day, Plaintiff requested that Macclesfield service the heater. Michael Batts (Batts), an employee of Macclesfield, serviced the heater at Plaintiff's home on 7 March 2002. Plaintiff testified that Batts took part of the heater out to Batts's van, then returned to the house and put the heater back together. Plaintiff said he cleaned the bricks surrounding the heater and the glass at the front of the heater while Batts was putting the heater back together. Batts stated that the heater was "fixed" and turned the heater back on for approximately ten seconds. Plaintiff asked if there was any way to check the heater, and Batts said Macclesfield had a carbon monoxide detector, but that Macclesfield only used it on tobacco barns. According to Plaintiff, after servicing the heater, Batts did not light the flame for long enough to observe the color of the flame.

Batts testified that upon arrival at Plaintiff's house, Batts noticed the heater was producing a yellow flame. Batts removed the burner and "blew it out" with compressed nitrogen. Batts said he then replaced the burner, lit it, and observed the flame for approximately fifteen minutes. After Batts observed the flame burning blue, he left Plaintiff's house.

EDMONDSON v. MACCLESFIELD L-P GAS CO.

[182 N.C. App. 381 (2007)]

Plaintiff testified that sometime during the night of 7 March 2002, or in the early morning hours of 8 March 2002, he and his wife woke up with severe headaches and nausea. They awakened their daughters and immediately left the house. Plaintiff saw that the heater was still burning and went back inside the house to turn it off. While doing so, he saw that the heater was as black as it had been before Batts's service. One of Plaintiff's daughters passed out on the front porch, and then she vomited in front of the house. Plaintiff decided to drive his family to the hospital instead of waiting for an ambulance. Plaintiff drove to Heritage Hospital in Tarboro, where the family was diagnosed with carbon monoxide poisoning. The family was transported to Duke Hospital, where they were found to be asymptomatic. Each member of the family underwent a 155-minute hyperbaric chamber treatment at Duke and was discharged.

Plaintiff called Macclesfield on 11 March 2002 and requested that Batts return to Plaintiff's home to re-inspect the heater. Plaintiff testified that Batts turned the heater on and after about thirty seconds, the heater turned off. When Batts turned the heater on again, it did not turn off, and Plaintiff's newly-installed carbon monoxide sensors registered increasing carbon monoxide readings. Plaintiff saw Batts grab his throat and leave the house coughing. Batts removed the heater and replaced it with a new heater the following day.

According to Batts, when he returned to Plaintiff's home and turned the heater on, the flame burned blue for a few minutes and then "got kind of lazy looking[.]" The heater automatically shut off. Batts removed the heater from Plaintiff's house and took it to Macclesfield's premises the following day. Plaintiff retrieved the heater from Macclesfield sometime during the next week. Plaintiff testified that when he regained possession of the heater, it had been thoroughly cleaned.

David McCandless (McCandless), an engineer with Accident Reconstruction Analysis, Inc., examined the heater in April 2002. The heater was located in Plaintiff's living room and was no longer hooked up. McCandless performed a "cursory overall inspection" of the heater and discovered that the radiants were out of place, but nothing else appeared unusual. McCandless checked the gas system in the house and concluded that the pressure going into the house was proper for the liquified petroleum appliances. He also checked the vent system and the chimney and determined they were not blocked. He also examined the stove and found that it was operating properly. McCandless noted that the chimney was not taller

than the surrounding structure, as required by the building codes then in effect.

McCandless testified that after further examination of the heater on 18 April 2002, he discovered "significant soot buildup" on the burner that contributed to a "lack of adequate air . . . into the burner assembly." McCandless opined that inadequate combustion started the soot buildup in the burner. McCandless also discovered that "the draft hood was not fully sealed so that the combustion products instead of going in the draft hood and then up the flue were escaping the draft hood into the living space." McCandless testified that if there was no combustion problem, no carbon monoxide would be produced, so the leak would not have caused any health hazard. McCandless testified that his inspection showed that the correct quantity of gas was going though the heater, the orifice size was correct, and the pressure was correct, but that there was not enough combustion air mixing with the gas in the burner. McCandless testified that an inadequate amount of air was mixing with the gas, but that the amount of air could be adjusted on the burner. He stated there was not a specific setting specified, but that at the time of an installation, the burner should be examined and the air flow adjusted to obtain the proper flame. "[O]nce you initially have the condition where you don't have enough combustion air and you start leaving soot on the burner and your burner starts getting dirty . . . it only gets worse until the problem is corrected." McCandless testified that after service on a heater and reinstallation of the burner, the air setting would have to be reset to ensure proper combustion. When a flame is burning properly, it would be a "blue flame with a well-defined inner cone in the flame."

McCandless also found "some deformation of the combustion chamber that prevented the gasket from sealing properly on the face of it." McCandless opined that this deformation would result from the combustion chamber repeatedly heating up during use. The front cover of the heater would have to be removed to see this deformation.

McCandless also testified that the heater contained a "thermal switch" which would operate to shut the heater off if all of the combustion gas was going into the home instead of into the chimney. The switch was tested and found to operate normally.

McCandless stated that when he examined the heater, he did not see an air shutter bracket installed on it, although the owner's manual

required that such a bracket be installed on the unit. The air shutter bracket "could affect" the amount of air that went into the mixture to be combusted, but that it was also there to regulate the velocity of the burning process. He also stated that the heater was originally a natural gas unit that was converted for use with liquified petroleum. McCandless's review of the owner's manual also showed that the heater should be serviced at least annually.

Plaintiff's amended complaint, filed 25 February 2005, asserted a claim for negligent repair against Macclessfield and various product liability claims against Empire. Plaintiff also named Tharrington Industries, Inc. (Tharrington) as a defendant, though the record is not clear as to whether Tharrington remains involved in this litigation. Empire moved to consolidate the action with two related actions in which Plaintiff's wife and daughters asserted similar claims, *Dianne C. Edmondson v. Macclesfield L-P Gas Company, Inc., et al.*, (03 CVS 596), and *Ashley Dianne Edmondson, Pamela T. Edmondson and Dianne C. Edmondson v. Macclesfield L-P Gas Company, Inc., et al.*, (05 CVS 30). Although no order granting the motion to consolidate appears in the record, subsequent motions made by the parties and orders by the trial court indicate that the cases were in fact consolidated.

Empire filed a motion for summary judgment dated 4 October 2005. Empire argued that a proximate cause of the incident was the modification of the heater for use with liquified petroleum instead of natural gas, which occurred after the heater left Empire's control, and that the modification was not performed in accordance with Empire's instructions. Empire argued it was not liable to Plaintiff pursuant to N.C. Gen. Stat. § 99B-3. Empire's motion was supported by an affidavit of James E. Kovacs (Kovacs), Director of Engineering for Empire, and by deposition testimony. Kovacs's affidavit stated that the subject heater was manufactured by Empire for use with natural gas and was sold to Tharrington on 10 March 1999. After the heater was sold to Tharrington, but before the heater was installed at Plaintiff's home, the heater was modified to be used with liquified petroleum. Proper modification of the heater for use with liquified petroleum required, *inter alia*, the installation of an air shutter bracket to regulate the air flowing into the burner.

Macclesfield filed a motion for summary judgment on 7 October 2005. Macclesfield argued that it was entitled to summary judgment because Plaintiff had not forecast any evidence of a negligent act or

omission by Macclesfield that proximately caused the alleged injury to Plaintiff.

In an order dated 20 December 2005, the trial court granted Empire's motion for summary judgment. Plaintiff and Macclesfield appeal. The trial court filed an order entered 3 February 2006, entered *nunc pro tunc* 6 December 2005, denying Macclesfield's motion for summary judgment. Macclesfield appeals.

## I. Summary Judgment as to Empire

**[1]** Plaintiff appeals the order granting summary judgment in favor of Empire. Plaintiff acknowledges that the order is interlocutory, since it "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). To be immediately appealable, an interlocutory order must contain either a certification by the trial court that there is no just reason to delay the appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2005), or the order must affect a substantial right. *See, e.g., Myers v. Barringer*, 101 N.C. App. 168, 172, 398 S.E.2d 615, 617-18 (1990). The order granting Empire's motion for summary judgment does not contain a certification by the trial court. Nonetheless, Plaintiff contends that appeal of this order is properly before us because the order affects a substantial right which will be lost or prejudiced absent immediate appeal. Specifically, Plaintiff argues that if the appeal is not heard, then Plaintiff will be subjected to the possibility of inconsistent verdicts. Further, Plaintiff states he is entitled to have one jury determine whether some, all, or none of Defendants caused his injuries. In response, Empire argues that because the claims against Empire and Macclesfield are distinct, there is no possibility of inconsistent verdicts and Plaintiff's appeal should be dismissed.

This Court has stated that

[a]n appeal from a trial court's order of summary judgment for less than all the defendants in a case is ordinarily interlocutory, and therefore untimely. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 211, 580 S.E.2d 732, 734 (2003), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). However, an order is immediately appealable when it affects a substantial right. *State ex rel. Easley v. Rich Food Servs., Inc.*, 139 N.C. App. 691, 695, 535 S.E.2d 84, 87 (2000). A substantial right is affected when "(1)

the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 735-36, 460 S.E.2d 332, 335 (1995); *see also Camp v. Leonard*, 133 N.C. App. 554, 558, 515 S.E.2d 909, 912 (1999).

*In re Estate of Redding v. Welborn*, 170 N.C. App. 324, 328-29, 612 S.E.2d 664, 667-68 (2005). In the present case, Plaintiff has alleged that the actions of both Empire and Macclesfield caused Plaintiff's injuries. If Plaintiff proceeds against Macclesfield, and summary judgment against Empire is later reversed on appeal, then there is a risk of inconsistent verdicts. One jury could determine that Macclesfield was responsible, while a second jury could determine that Empire was responsible. *See Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 409 (1982) (finding a substantial right and that the plaintiff had a "right to have one jury decide whether the conduct of one, some, all or none of the defendants caused his injuries"). Thus, we find the order granting summary judgment to Empire affects a substantial right and is immediately reviewable by this Court.

Empire's reliance on *Myers v. Barringer*, 101 N.C App. 168, 398 S.E.2d 615 (1990), is misplaced. In *Myers*, we held that there was no risk of inconsistent verdicts where the claims asserted against the defendants were "separate and distinct" and arose out of different legal duties owed to the plaintiff. *Id.* at 173, 398 S.E.2d at 618. The present case, however, involves allegations that the actions of each Defendant combined to cause Plaintiff's injury. Therefore, we conclude that Plaintiff's appeal of the order granting summary judgment in favor of Empire is not premature.

**[2]** Macclesfield also asserts a right to participate in the appeal of the order granting summary judgment in favor of Empire. Macclesfield contends that the order granting summary judgment in Empire's favor will preclude Macclesfield from obtaining contribution from Empire in the event that Plaintiff obtains a judgment against Macclesfield.

In *Sanders v. Yancey Trucking Co.*, 62 N.C. App. 602, 303 S.E.2d 600, *disc. review denied*, 309 N.C. 462, 307 S.E.2d 366 (1983), this Court found an interlocutory judgment immediately reviewable. In *Sanders*, the judgment which was appealed determined the contribution and indemnity rights of two of the defendants with respect to a third defendant. *Id.* at 606, 303 S.E.2d at 602. We find the same rationale applicable here and conclude that this appeal affects a substantial right of Macclesfield. Accordingly, since the order affects a

**EDMONDSON v. MACCLESFIELD L-P GAS CO.**

[182 N.C. App. 381 (2007)]

substantial right for both Plaintiff and Macclesfield, we review both parties' appeals of the trial court's order granting summary judgment in favor of Empire.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "The party moving for summary judgment bears the burden of bringing forth a forecast of evidence which tends to establish that there is no triable issue of material fact." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998). A defendant moving for summary judgment can satisfy this burden by: "(1) proving that an essential element of the plaintiff's claim is nonexistent, (2) showing that [the] plaintiff cannot produce evidence to support an essential element of his claim, or (3) showing that [the] plaintiff cannot overcome an affirmative defense which bars the claim." *Rich v. Shaw*, 98 N.C. App. 489, 490, 391 S.E.2d 220, 221-22, *disc. review denied*, 327 N.C. 432, 395 S.E.2d 689 (1990). If the moving party meets this burden, the nonmoving party must respond with a forecast of evidence demonstrating an ability to make out a *prima facie* case at trial. *Creech*, 347 N.C. at 526, 495 S.E.2d at 911. *See also City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654, 268 S.E.2d 190, 193 (1980) ("If the moving party meets [its] burden, the nonmoving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not so doing.").

[3] In the present case, Empire asserts that N.C. Gen. Stat. § 99B-3 barred recovery by Plaintiff as to Empire. We agree, and therefore affirm the trial court's grant of summary judgment as to Empire.

N.C. Gen. Stat. § 99B-3 (2005) provides

(a) No manufacturer or seller of a product shall be held liable in any product liability action where a proximate cause of the personal injury, death, or damage to property was either an alteration or modification of the product by a party other than the manufacturer or seller, which alteration or modification occurred after the product left the control of such manufacturer or seller unless:

(1) The alteration or modification was in accordance with the instructions or specifications of such manufacturer or seller; or

(2) The alteration or modification was made with the express consent of such manufacturer or such seller.

(b) For the purposes of this section, alteration or modification includes changes in the design, formula, function, or use of the product from that originally designed, tested, or intended by the manufacturer. It includes failure to observe routine care and maintenance, but does not include ordinary wear and tear.

This Court has held that

[w]hen, as here, the forecast of evidence demonstrates that a proximate cause of [the] plaintiff's injury was the modification or alteration of the machine by a party other than the manufacturer after it left the control of the manufacturer; and that the alteration of the machine was contrary to the instructions of the manufacturer and done without its express consent, then G.S. § 99B-3 bars recovery from the manufacturer.

*Rich*, 98 N.C. App. at 492, 391 S.E.2d at 223.

In the present case, the parties do not dispute that: (1) the heater was manufactured for use with natural gas; (2) modification of the heater for use with liquified petroleum pursuant to Empire's instructions required the installation of an air shutter bracket; and (3) no air shutter bracket was found on the heater when it was examined after the incident. McCandless's testimony demonstrates that a cause of Plaintiff's injury was the improper mix of liquified petroleum and combustion air, which was caused at least in part by the lack of an air shutter bracket. We acknowledge that the evidence suggests that both the missing air shutter bracket and the leaks in the heater itself led to the production and escape of the carbon monoxide. However, the statute bars a manufacturer's liability where "a proximate cause" of the injury is the improper modification and does not require that the modification be the sole proximate cause. Plaintiff asks us to find that N.C.G.S. § 99B-3 does not apply to situations where the modification does not relate to the design defect alleged to have caused the injury. However, such a reading would require that we ignore the plain meaning of the statute and previous interpretations of this language by this Court. *See Phillips v. Restaurant Mgmt. of Carolina L.P.*, 146 N.C. App. 203, 218-19, 552 S.E.2d 686, 696 (2001), *disc. review denied*, 355 N.C. 214, 560 S.E.2d 132 (2002); *Rich*, 98 N.C. App. at 492, 391 S.E.2d at 223. Therefore, we hold that N.C.G.S. § 99B-3 bars recovery by Plaintiff from Empire, and we affirm the trial court's grant of summary judgment as to Empire.

**EDMONDSON v. MACCLESFIELD L-P GAS CO.**

[182 N.C. App. 381 (2007)]

## II. Summary Judgment as to Macclesfield

[4] The trial court denied Macclesfield's motion for summary judgment in an order entered 3 February 2006, *nunc pro tunc* 6 December 2005. An order denying summary judgment is not ordinarily immediately appealable. *Lee v. Baxter*, 147 N.C. App. 517, 519, 556 S.E.2d 36, 37 (2001). This rule is designed to prevent fragmented, premature, and unnecessary appeals by permitting the trial court to bring a case to final judgment before submitting it to the appellate courts. *Id.* In the absence of a Rule 54 certification by the trial court, a party may only appeal an interlocutory order where the order affects a substantial right that "will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment." *Blackwelder v. Dept. of Human Resources*, 60 N.C. App. 331, 335, 299 S.E.2d 777, 780 (1983).

In *Liggett Group v. Sunas*, 113 N.C. App. 19, 24, 437 S.E.2d 674, 678 (1993), we concluded that a substantial right was affected "because of the close relationship between the claim . . . adjudicated by the trial court and those which remain[ed][.]" In *Liggett*, we also reviewed the trial court's dismissal of the defendant's counterclaims "[w]ithout deciding whether a substantial right was affected[.]" *Id.* at 24, 437 S.E.2d at 678. We noted that we are "free to exercise [our] discretion and rule on an interlocutory appeal where our decision would expedite the administration of justice." *Id.* We apply the same rationale here and elect to review the order denying Macclesfield's motion for summary judgment. Therefore, we grant Macclesfield's petition for writ of certiorari to hear this issue.

[5] Macclesfield assigns error to the trial court's decision to deny summary judgment in its favor. Macclesfield contends that Plaintiff's forecast of evidence fails to establish a negligent act or omission by Macclesfield which caused Plaintiff's injury. We disagree, and we affirm the trial court's decision to deny Macclesfield's motion for summary judgment.

As previously stated, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). We apply the same rules discussed in the context of Empire's motion for summary judgment to Macclesfield's motion for summary judgment.

Plaintiff's amended complaint alleges that Macclesfield "negligently repaired the gas heater described above in that the, employees and/or agents: (a) failed to properly repair the heater; (b) failed to properly inspect the work performed; (c) failed to properly vent the heater; [and] (d) failed to properly test the heater after the work [was] performed."

> To establish actionable negligence, the plaintiff must show that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed to the plaintiff under the circumstances in which they were placed, and that such breach of duty was a proximate cause of the plaintiff's injury.

*Sabol v. Parrish Realty of Zebulon, Inc.*, 77 N.C. App. 680, 685, 336 S.E.2d 124, 127 (1985).

In Plaintiff's deposition testimony, he stated that after Batts serviced the heater at Plaintiff's home, Batts turned the heater on. Plaintiff testified that the heater lit up immediately, and that Batts let it run for about ten seconds before turning it off. Batts told Plaintiff the heater was "fixed" and Plaintiff asked Batts whether there was any way to check the heater. Batts said he did not have a carbon monoxide monitor with him, and that Macclesfield only used them on tobacco barns. Plaintiff said the flame was not lit long enough for Plaintiff to see the color of the flame. According to McCandless, after reinstalling a burner, various air settings should be checked, including gas pressure and orifice size, and the flame produced should be visually checked if no carbon monoxide meter is used. A "blue flame with a well-defined inner cone in the flame" should be achieved, and an "unstable" flame "that moves around a lot or that has a lot of bright yellow or orange color in it" signals a problem.

On the other hand, Batts testified that when he arrived and turned on the heater, the flame was burning yellow. He took the burner out of the heater, took the burner outside the house, "blew it out" with compressed nitrogen, and brought it back inside. After Batts had cleaned the burner, he testified that Plaintiff vacuumed parts of the heater. Batts testified that after servicing the heater, he re-lit the pilot, and burned the flame for approximately fifteen minutes. He stated that the flame was "a pretty blue flame."

When the above evidence is taken in the light most favorable to Plaintiff, the nonmoving party, it demonstrates that there was a gen-

EDMONDSON v. MACCLESFIELD L-P GAS CO.

[182 N.C. App. 381 (2007)]

uine issue of material fact as to whether Batts (1) failed to repair the heater properly, (2) failed to inspect the work properly after it was performed, and (3) failed to properly test the heater after the work was performed. If Plaintiff's testimony is believed, then Batts only turned on the flame for a moment after cleaning out the burner, and he did not look to ensure that the flame was burning properly. If Batts's testimony is believed, then Batts remained in Plaintiff's home and observed the heater's flame for fifteen minutes after cleaning out the burner. This conflict in the evidence precludes summary judgment in Macclesfield's favor, and we affirm the trial court's denial of the motion.

III. Motion to Strike Memorandum of Additional Authorities

**[6]** Macclesfield filed a memorandum of additional authorities on 20 December 2006 after oral argument in this case. In response, Empire and Plaintiff each filed a motion to strike the memorandum as (1) untimely filed and (2) containing argument in contravention of the Rules of Appellate Procedure.

Rule 28(g) of the Rules of Appellate Procedure states

[a]dditional authorities discovered by a party after filing his brief may be brought to the attention of the court by filing a memorandum thereof with the clerk of the court and serving copies upon all other parties. The memorandum may not be used as a reply brief or for additional argument, but shall simply state the issue to which the additional authority applies and provide a full citation of the authority. Authorities not cited in the briefs nor in such a memorandum may not be cited and discussed in oral argument.

N.C.R. App. P. 28(g). The rule clearly provides that a memorandum "may not be used . . . for additional argument." Because we find that Macclesfield has done more than "state the issue to which the additional authority applies and provide a full citation of the authority[,]" we allow Empire's and Plaintiff's motions to dismiss the memorandum of additional authority.

Affirmed.

Judges BRYANT and ELMORE concur.